We welcome you here to the courthouse and hope you all, if you're leaving town, get out before the rain comes, evidently. We have an interesting docket this morning, but we do ask you to abide by our traffic lights, which are, when the yellow light comes on, you have two minutes left, and when the red light comes on, you please conclude your argument unless you're answering a question from the court. We are familiar with the briefs and record excerpts. We have not read the entire record, most likely, so we appreciate record citations. The first case of the morning is number 2540520 in the manner of Donald Triplett, black v. Triplett, and we'll hear first from Mr. English. May it please the court. My name is Eric English from the Porter Hedges Law Firm, here for the appellants. I'm here with my colleague Adriana Young. I intend to first discuss jurisdiction and then focus on two of our merits arguments primarily, the first one being the violation of the rule to appear and be present to testify when called, and the second, whether Section 727A3 of the Bankruptcy Code requires the debtor to keep or preserve records. Of course, I'm happy to address other issues as well. Turning to jurisdiction, the district court's judgment is final and appealable under Section 158. The discharge action was a separate adversary proceeding in the Bankruptcy Court. The Bankruptcy Court issued a judgment on the merits of that adversary proceeding and issued a separate order on the sanctions motions. The district court affirmed the discharge judgment, completely disposing of that adversary proceeding. The only issue that was remanded was the separate district court's opinion, which is at Record on Appeal 22944. When the judge stated as to the debtor's discharge and all of the issues pertaining to discharge, the judgment is affirmed. What's your best case? For the finality, Your Honor, I think the best case is Louisiana World from this court, where the court held that each adversary proceeding should be considered a separate judicial unit for purposes of determining finality. That applies here because the adversary proceeding was separate from the sanctions motions and was completely resolved by the district court. But the judge, I mean, I'm looking at the judge's order and the district court, and it has two cause numbers. Well, when we have two cause numbers, it's one appeal because they're consolidated. Yeah, I'm looking at the final judgment as well, Your Honor, and it does have two cause numbers. The only thing that he remanded was the sanctions matter. Well, I'm well aware of that, but what got me, you know, I've had some experience here, and what got me started on this was my fading memory. But it turned out there was some support for that, although there's a more recent case in Louisiana law called Pratt, in the manner of Pratt. Didn't you, didn't you, did you research this issue? Yes, we did. And in the Pratt case, the court held that remand on the issue of attorney's fees, which is the only thing that's pending in the sanctions motion, is the issue of attorney's fees. Right, I'm surprised you cited Louisiana World rather than Pratt, but maybe that was because... Pratt was my second case, sorry. Maybe that was, well, maybe you had heard of In re Cato Parish or county management, In re County Management, judged by Judge Randall, now King, also someone who knows about bankruptcy in April of 1986, which said that the judgment was not final if the district court remanded for significant further proceedings. And Cato Parish, 1999, reaffirmed that. So I'm not, you know, in a vague sense, I'm sympathetic to your position, but in a not vague sense, you know, what do you say? So taking the rule from those cases, which is what, which is what we're relying on, there are no significant further proceedings that are being remanded. The sanctions motion that is being remanded only deals with the issue of attorney's fees. And in the Pratt case and other cases, the court has held that remand for the issue of attorney's fees is a collateral issue if it will not alter or moot the order. That's the case here. It won't affect the discharge. Well, then I'm going to have to ask you to file a post-submission brief, both sides, because we did a fair amount of research on this, and I'm not sure that you can construe significant proceedings in that way. Happy to file a 28-J letter. I think, no, I'm saying a post-submission brief, two to four pages, single-spaced, give us all the citations that you think are relevant. Happy to do so, Your Honor. It's my recollection, and if y'all will cover it as well, that even if you're not in bankruptcy, if attorney's fees do not keep a judgment from being filed on normal appeals, I think that's great. Right. There's definitely support for that proposition in the cases. Well, I think that, but there's a logical difference between, and this is my main reasoning, there's a logical difference between 1291 and 158. When we hear appeals from the district court, which has reviewed the bankruptcy court, the parties have already gone one step on appeal. If the district court remands to the bankruptcy court part of the case, then you're bifurcating the appeal to this court, which means that the party that gets remanded is going to have two more appeals before the entire controversy is finished, and in bankruptcy, you're squeezing a turnip. So that is probably what led Judge Randall in 1986 to talk about significant further proceedings, but I could be wrong. We'll be happy to brief that issue further, Your Honor. All right, sir. I'll turn to our arguments on the merits then. This debtor is not the honest but unfortunate debtor that the bankruptcy system is designed to protect. He has years of experience owning and managing businesses, and he had a prior bankruptcy case and a discharge, yet he repeatedly and intentionally flouted the rules for disclosure in this case. The rulings of the lower courts effectively reward this behavior, which encourages future conduct from debtors. The violation of the rule to be present at trial when called is encapsulated in Bankruptcy Rule 4002. That concept has been part of the bankruptcy statutes for more than 100 years. It's based on the principle that a discharge in bankruptcy is a privilege, and if creditors are objecting, a debtor has to appear when he's called and answer their questions. In this case, the debtor not appearing was completely intentional. But he came in the next day and he answered all the questions, so I don't see why this is an issue. It's an issue because when he wasn't present on the first day when he was called, it completely turned the trial upside down. Instead of proceeding with trial and beginning with the debtor testifying when the creditors were asking him questions and establishing their case in chief on their terms as the rule contemplates, instead he got to testify direct from his own counsel and set the tone for trial and present the court immediately with his version of the events. It's completely different than if he had been called by the creditors and they had immediately confronted him with examples of his misconduct and omissions during the case. Another thing is that it's troubling that this was an intentional violation. His counsel stated that Mr. Triplett will be here for his case in chief, but he was not going to participate in the plaintiff's case in chief because he doesn't have to because he wasn't subpoenaed. So the trial begins with the bankruptcy court blaming our side for not subpoenaing the debtor when that was not required at all. Counsel for the debtor stated that he couldn't accept service of a subpoena and trial counsel for the appellants stated that the debtor had been evading service of a subpoena. The bankruptcy court threatened to dismiss the case for want of prosecution three times during that initial exchange because he said without the debtor present, quote, you have no case to put on, end quote. The court did offer a short continuance from that day, which was a Monday until Wednesday, to try to procure the debtor's attendance. Under the circumstances, that placed the appellants in an untenable position. They had to choose to either go forward without the debtor in violation of the rule or to accept a continuance when there was no reasonable likelihood that they could procure his attendance. They hadn't been able to up to that point. And if they had gone forward on Wednesday after accepting the short continuance and the debtor still wasn't there, they could have reasonably assumed that the case would be dismissed for want of prosecution because the judge had already threatened that. The point is that counsel should be able to reasonably expect that the court will enforce the rules, and the opposite happened here. From the very beginning of trial, our side had to adjust to a world where the judge was blaming the appellants for the debtor's intentional absence. Offering a continuance didn't cure the error, it compounded the error. The bankruptcy court was wrong to say that a subpoena was required, but offering a continuance to try to serve a subpoena doesn't fix the violation. And what's your best case for reversing on this basis? Your Honor, one second. Your Honor, I apologize. I got a little bit lost in my outline. Well, you can find it later. Okay. I'll address that in a moment. I apologize. Just to finish up on this point, instead of proceeding with a live witness, they had to read an exhibit into the record that had excerpts from his prior testimony. That's far different, of course, from calling the witness live. And as I mentioned, the next day when the debtor appeared, he testified on direct from his own counsel, far different than being presented immediately with questions from the appellants. Were you trial counsel? I was not. Was it your firm or another firm? It was a different firm. Okay. I think perhaps the biggest harm that was caused by this error, which, of course, the district court found that there was an error on this point. The question really is whether it's harmless. Before the trial or before the evidence even started, the district court blamed the predators and said they were the ones that had made the mistake and that without the debtor there for their case in chief, they had no case to put on. It's not surprising that was the conclusion that was reached at the end of the trial. It became a self-fulfilling prophecy that traces back to the error of not requiring the debtor to be present. The outcome also rewards the debtor's blatant gamesmanship. Nothing in the bankruptcy code is even remotely intended to reward that. For these reasons, denial of discharge is an appropriate remedy for the violation of Rule 4002. I'll move now to the tax return argument, 727A3. Denial of discharge is appropriate if the debtor fails to keep and preserve adequate financial records. This Court has held that tax returns are the quintessential documents in an individual bankruptcy case. And this Court has interpreted keep and preserve, keep to mean maintain under the statute in the Mandel case. But he didn't file them. They didn't exist. So how do you keep something that didn't exist? In this context, and there's two circuit court opinions on this, the Seventh Circuit I think addressed that exact question well. It said, in this context, keep and preserve are not synonyms. Keep has the same meaning it would have in phrases such as to keep a diary or to keep a record. That is to maintain a record by entering it in a book. Otherwise, the repetition of the word preserve is superfluous and disfavored result. And that's the In re Scott case from the Seventh Circuit. Applying the canon of the rule against surplusage, keep and preserve can't be interpreted to mean the exact same thing. In Scott from the Seventh Circuit and the Caneva case from the Ninth Circuit, both of those courts held that this statute requires the creation of records, not just the keeping or holding onto records that already exist. The district court relied on the canon of construction, nocitor associus, which means that one is known by its associates. In this situation, it's more appropriate to apply the rule against surplusage, as I just mentioned. I think it's also important to note that in a case like this, where the disclosure and production of documents has been lacking, tax returns are particularly important. They aggregate key financial information that creditors rely on in a case like this, especially when they don't have other records. You did get the 2017 tax return, right? Eventually, that one was filed. And so the year 2018 would have been filed in 2019 when he filed bankruptcy, is that right? Did he file that? No. You've never seen that?  Well, then he is a foul of the IRS, I suppose. It is an issue for the IRS, but it's also an issue of disclosure within the bankruptcy case. There is a requirement under Rule 4002 for the debtor to provide tax returns when creditors make a request. And so it's not simply an IRS issue. Well, I know that, but you got all the bank records. We ended up getting a number of the bank records from our own third-party subpoenas, but on their own, the bank records don't provide a full picture, and it's not the creditors' burden. Why not? Because there were a lot of things that were unexplained. For example, the fact that the deposits into his accounts didn't match his income, as stated in the Statement of Financial Affairs. And it's basically raw data that we were forced to try to unravel, which creditors are not required to do. Well, 727.83 doesn't say they're required to produce their tax returns and or their bank statements. It just says any recorded information. And it seems to me bank statements, if the debtor isn't dealing in cash or hidden accounts, ought to be pretty revelatory. It's certainly probative of the issue, but the debtor is required to provide financial records that allow creditors to reasonably piece together his financial condition and his transactions. On their own, the bank accounts, and by the way, he only disclosed three bank accounts in his schedules, and the appellants were able to uncover 11 other accounts. And so we're talking about someone that has obfuscated what is actually there. The accounts on their own just simply don't provide a full picture, and it's not incumbent upon creditors who are challenging discharge to have to piece the debtor's financial condition together. It's his job to disclose it. I see that I'm out of time. Did the vaults destroy some of the financial records? There's no finding to that effect in the record. The bankruptcy court did point to the debtor's testimony on this. I would point out that there's other testimony in the record in the form of depositions that contradicts that point. And in any event, those records that were being discussed only covered a small period of time, only a two-year period, not the entirety of the time that he didn't file taxes. So that's, let me just clarify one thing. So mostly, am I correct, you're challenging the district court's affirmance of findings of fact, except for the question about keep or preserve records, which you're arguing is a matter of law. That is definitely a de novo issue. The 4002 issue we believe is a de novo issue as well, separate obviously. There are some findings of fact that I think are not supported by the record. In particular, that he used his best efforts basically, I'm paraphrasing, but to comply. I would also submit that it's not clear that the court would have reached that conclusion if he had recognized the error under 4002 and realized that the debtor was supposed to be there for the trial and intentionally did not show up. Under that circumstance, it's unclear whether he would have accepted a justification defense. Did you have a rule 7004 exam or did someone have one? A 2004 exam? Yes. Yes. Eventually, that was the subject of a lot of litigation in the bankruptcy court. He didn't comply with the orders. Right. I remember that. Eventually, yes. Sorry. Okay. And was he cross-examined with the 2004? In effect, yes. The 2004 was taken by the creditors. I would consider that to be an adverse examination. Okay. Thank you. Thank you. Go ahead. Thank you. Good morning, and may it please the court, my name is Greg Mitchell. I am here on behalf of the affilee Donald Triplett, who was the debtor in the underlying bankruptcy and the defendant and the adversary. For the court's benefit, I was the trial counsel. I'll start with, in response to the jurisdictional issue that the panel requested, we have actually found something that we agree on. We are in agreement that this court has jurisdiction, based on the research that I've done that suggests that the discharge issues were actually treated as final. I have the same quote as appellant's counsel. So I will certainly respond with a post-hearing brief as well, but we tend to agree on that issue. Starting with the rule 7. So you really want to be remanded on sanctions? Well, the sanctions is against him, I suppose, so you don't care. Because that just prolongs things and costs him a lot more attorneys' fees. Well, Your Honor, we don't really want sanctions to have to go forward either, but ... Well, the judge remanded on your sanction motion. He did, and ... Or not on ... I'm sorry. It was ... I keep getting confused. There, on the ... on Black's sanction motion. It was their motion that was remanded. I would ... hopefully don't have to get there, but I would think that our motion would be revived as well, based on the exact same reasoning, if they chose to pursue it. Well, you didn't appeal it, so I think you're going to have a problem with that. True. Okay. Moving forward to Rule 4002, I'll start briefly and not spend a lot of time without intending to be overly obstinate. I respectfully continue to question whether there was any Rule 4002 violation at all. I don't think that it's necessary for this honorable court to agree with that position in order to affirm the district court's ruling, but I would contend that position still has merit, and that is based on the plain language of the rule. Rule 4000A.2, which is the subparagraph in question, states that the debtor shall attend the hearing on a complaint, objection to discharge, and testify, if called as a witness. The phrase, if called as a witness, can reasonably be read as a condition of both attendance as well as testifying. A debtor can't know for sure whether they will be called as a witness or when. Here, following the debtor's being called as a witness, he subsequently appeared. The rule is notably light on specifics. It doesn't say that the debtor must attend the entire hearing. It doesn't say that the debtor has to appear at all, if not called as a witness. And there's no requirement to subpoena him, right? I think we would agree with that at this point. We're not aware of that at the time. I'll own up to the rule 4002 never entering as an issue in my practice. I've had a change of heart as to whether a subpoena is required for the debtor in an adversary proceeding, but nevertheless. Yeah, he's the defendant, after all. Agreed. Agreed. Normally you don't require a subpoena for a defendant, right? Normally the defendant has to show up or else default judgment. True. I think in a lot of cases there are still burdens to meet, whether or not the defendant is there. But again, it was not intended to be a primary point because he appeared. Was there a reason why he didn't appear on the first day? He didn't know the case was scheduled or something like that? There was no good excuse.  In any event, it's undisputed that there is no penalty for a violation of rule 4002 that is actually specified in the rule. Despite appellants urging, there is not a case that has established any sort of a blanket rule that failure to show up for any part of the trial automatically leads to a denial of discharge. So the question becomes, to the extent a violation is determined to have occurred, what is the appropriate consequence? And courts have consistently recognized a wide degree of discretion on the part of the trial court. And in the large majority of the cases, the trial court have required a creditor to establish a pronunciation case. Appellants don't like that rule, but respectfully I think it is the trial court's discretion and we respectfully support the trial court's use of its discretion and believe that it was not clear error. We don't believe that it's for either the appellants or even respectfully this court to second guess what was a reasonable use of discretion. May I ask a question? I mean, the way this evolved, they're saying it was highly detrimental to their case that the debtor was put on on the second day with you questioning him, basically, right? That did happen, yes. Whereas instead, they'd have put him on as an adverse witness the first day. And that is true. Okay. And I believe that that question gets at the, I guess, opportunity that the district court, Judge Campbell, provided them to enunciate the harm, the rule. Well, couldn't the bankruptcy court have said, we're just going to treat this as the first day and let creditors go first with a triplet? It could have. Did anyone ask for that? I don't believe they asked for that, but I do believe that Judge Searcy offered something to that effect. Essentially, there is, I don't have that record site in my notes, but there was a statement by Judge Searcy that if, at the time, he wasn't there, but if and when he shows up, I'll give you the right to ask any questions that you want to ask. He made it clear that he was not going to limit the scope of those questions. And indeed, when Judge Campbell posed the question of appellant's counsel at the oral argument of the district court, as to what questions would you have asked had you been given that opportunity, was there any, let me rephrase, was there any question that you didn't get to ask? And they could cite to none. And Judge Campbell... He's Judge Campbell Barker. Barker's his last name.  That's okay. I'm sorry. That was, I believe, a significant basis for his finding that there was harmless error and no violation of a substantial right. And honestly, it's still not entirely clear what appellants assert to be the substantial right. Their brief references a couple of possibilities. First, they argue it in what I would respectfully suggest is kind of a circular argument. And that is that the substantial right is the right to call the debtor to testify. But that encompasses the right to ask questions, which they got. And it seems to kind of beg the question of what the harm was. Appellants next referenced the notion that the debtor's absence harmed their presentation. Counsel used the phrase, turned the trial upside down today. But it's not clear how that happened. If there weren't any questions that they admittedly didn't get to ask, how could it have harmed their presentation? And they don't cite too many cases where, and I haven't seen any, where a disruption of the flow of a case constituted a substantial right that would keep there from being harmless error. I would point out that... Maybe that's another ground for sanctions, that he didn't show up, if it's harmless error and all that. Potentially. Appellants also claim that the bankruptcy denied a request for continuance and forced them to proceed. Respectfully, I don't think that's the case. I do have a site for that. It's page 9599 of the record, where the judge specifically asked them, how long of a continuance do you need? So there was no forcing, and there was no denial of a continuance. Indeed, trial counsel indicated on multiple occasions that they were prepared to go forward. That they could get in what they needed, even without him. But then subsequently got to ask all the questions that they wanted to ask. Turning to the 727A3 issue, on multiple occasions now, the appellants have argued that there have been or are cases where courts have refused to discharge debtors because they failed to create tax returns. And respectfully, I don't believe that's the case. Counsel cited to the Scott case. The Scott case does, I believe, stand for the proposition that there were some records that needed to be created. But they were not tax returns. They were other financial records. Has Mr. Triplett ever filed his returns for 1718-19? I believe, I don't know. I believe he has, but I don't know, I don't have personal knowledge that that, that that has ever occurred. Well, if I were a creditor, I'd move to reopen the proceeding. But that's just me. The, the, they allege, he didn't address it today, but there was an allegation regarding commingling of business and personal. We would suggest that's a red herring because it relates to preferred platinum, which was a DBA of the debtor. And so since preferred platinum and Donald Triplett are one of the same, it is seemingly meaningless to suggest that there was commingling. There is no requirement that I'm aware of that an individual who runs a sole proprietorship is required to have a separate account for their personal expenses. What do you say about the, the 11 bank accounts? So that was addressed at the trial. And Mr. Triplett testified credibly and accurately, I believe, that his, his bankruptcy counsel, Ms. Lindauer, advised him that the bank accounts that you have to disclose are bank accounts that have assets because the question relates to the existence of assets. If there is no money in a bank account, it is not an asset that a trustee is going to be able to administer. And therefore, it was not necessary to simply list a bank account because it existed. He, he listed the bank accounts that had actual funds in them. Did he have an ownership interest in Copper Creek? He did not. And it was, it was undisputed the entire time that he never had an ownership interest in Copper Creek. The, there was much, much made of the, that possibility. He was also not an employee simply because he had received money from Copper Creek at one time. There were some questions, there were some statements made in a questionnaire from his bankruptcy counsel where he disclosed several things, including mentioning Copper Creek. But, but number one, a questionnaire from a bankruptcy counsel is, is not a, is not a statement made under oath that can be the subject of a false oath. But nevertheless, the, the district court judge, I believe, accurately addressed that, noting that Mr. Triplett had really over disclosed and that fact of the matter remained that since he did not have an interest in Copper Creek, that there was really no disclosure requirement at all. An appellant used the district court statement regarding confusion to, to try and, and, and I guess weave some clever phrase, phraseology to suggest that, that, that the district court excused it simply based on confusion. The district court was really kind of being generous in, in my opinion to appellants by basically suggesting that there was no requirement at all for that disclosure to be made. And, and the fact that he did was maybe a confused attempt to over disclose or something to that effect. Let me ask you a question. Copper, so he said a couple of these entities had gone out of business, right? At least one. The, the... Well, what's the statute of limitations for fraudulent conveyance? Four years, right? Four years in Texas. So, it seems to me that documents going back at least four years would be relevant to the creditor's inquiries in a bankruptcy case. And I, I don't necessarily disagree and I don't think that Mr. Triplett disagreed either. I think he attempted to provide everything that was requested. Well, what I'm saying is if Copper, if he was running Copper Creek and getting, I think that's one, and getting money from it, within four years of bankruptcy, he had a duty to preserve those, to keep, to make those records available. I think he did. You're thinking he did? I'm almost certain of it. What about the other, what about the others where they said the, the banks, the, you know, the, the accounts had been closed out? And that was, that was a third entity that I'm drawing a blank on the name, but, but there was the entity that had closed out and he provided the bank statements up to the date that it closed out. So, the, the only complaint was that he hadn't provided subsequent bank statements, but there was nothing there. I don't have a lot of time, but I'll touch briefly on the tax returns versus bank statements discussion that the court had with the Appellant's Counsel. We pointed out on our brief, first of all, that, that bank statements are much more reliable source documents than tax returns in any event. And that's because tax returns are, are not source documents. They are a reflection of source documents. And if I'm a creditor, I would much rather dig into somebody's personal affairs by looking at bank statements because they could put anything on a tax return. But bank statements are prepared by third parties based on transactions that, that actually occurred. So, I think that's a, I think it's inaccurate to suggest that tax, that tax documents are more important. I, I think Appellant's Counsel suggested that, made the example that there were deposits that didn't match. But it's not clear how tax returns would clear that up. Tax returns are not going to reconcile that deposits didn't match. And the whole deposits didn't match was another red herring raised by Appellant's where they suggested that simply because there were deposits into the bank account that didn't match the, the amount of income that was listed on the Statement of Financial Affairs, that somehow that was nefarious. Well, the difference is you can go to prison for filing false tax returns and if you manage to escape bankruptcy, you're not as likely. True, true. I would respectfully suggest that there are numerous reasons that, that bank deposits would not be the same as income. Tax, tax refunds. Yeah, because you'd be doing business by cash on the side or through other accounts somewhere. That's certainly a possibility. Or through your spouse's account or something. I don't think there was any evidence suggesting that there was a lot of cash transactions. But it's certainly, certainly a possibility that that's how someone could prevent money from showing up in a bank account. But still, I'm not sure tax returns are going to clear that up either. Your time has elapsed. Understood. All right.  All right, Mr. English. Thank you, Your Honor. Let me start by citing my best case for Rule 4002, which was obviously a highly foreseeable question. I apologize for not having that at the tip of my tongue. We cite a number of cases in footnote 79 of our opening brief on the issue of, of the proper remedy for a violation of Rule 4002. Probably the one of those that's the most strong for us is Ingray-Robson, 154-BR-536. That's from Bankruptcy Court, Eastern District of Arkansas, 1993. That case said, based on the circumstantial evidence of the debtors' movements, the continuing fraud being perpetrated upon creditors, violations of orders, and the direct violations of duties imposed by Rule 4002, the court finds that the debtors' failure at the duly noticed objection to discharge hearing was intentional. Accordingly, the discharge will be denied for failure to appear at the hearing. Similar fact pattern here. We know that the failure to appear was intentional. We don't have to infer his intent because it's in the record. Staying with the 4002 point, I think one of the issues here is what could the court have done or should the court have done. Our biggest point is there should be some consequence for violating the rule. I mean, there are a number of things that could have happened. The court could have started the trial, you know, when the debtor was there and had him testify first on our calling. The court could have had the debtor not be able to testify in his own case in chief because he didn't appear for our case in chief. There are a number of things that could have happened. But remember here, the court didn't recognize that that was even a mistake that the debtor had made. And so it's not as if the court was fashioning a remedy for a violation. He didn't recognize the violation in the first place. Turning to the 727A3 tax return argument, tax returns are the quintessential records in a bankruptcy case. That's from In re Dennis, 5th Circuit 2003 case. Counsel mentioned relying on advice of counsel to not file tax returns. That's simply not a justification for not doing it. They're required to be filed and it's just a crucial record. On the issue of some overlap between records of preferred platinum in the bank accounts and the inability to distinguish between business records and personal records, I take the point that with respect to that account, there may be some items that overlap. Of course, that doesn't apply to other accounts for other entities that were not DBAs or sole proprietorships. We also made the point in our brief that it's hard to tell from looking at a bank statement of a construction business whether all of the deposits into that business are property of the debtor. That could be held for customers or other people under the Texas Construction Trust Fund statute. With respect to the incomplete records that we've talked about, I would point out a couple of record sites that I think might be helpful. The debtor testified in response to the question about the accounts that we were able to uncover that were not initially disclosed. He said, I've got a lot of accounts. I may have missed one. I have a lot of accounts, so I don't know. And that's 4298 through 4308 of the record on appeal. He also testified that he gave his schedules of assets and liabilities and statement of financial affairs only a cursory review. That's record on appeal 9937. Courts have consistently held that signing schedules without fully reading them and understanding them constitutes a reckless indifference to the truth. How big was the schedule of assets and financial affairs? How many pages was it? Yeah. I don't recall offhand. I don't have that. Would you rate this as a complex bankruptcy? I think it was a complex bankruptcy for an individual case, yes. Obviously, it's one person, but he had ownership interests in a lot of different companies. He had a lot of accounts. There were a lot of transactions and transfers and so on. And your clients were claimed to be owed how much? I think collectively it's just under 500,000. They both have claims in the 200,000 to 300,000 range based on breach of contract and fraud. I see my time has expired. Thank you very much for the time and for your attention. I clerked for Judge DeMoss 20 years ago and it's my first appearance in this court, so thank you for your patience. Great. We love Judge DeMoss. All right. Thank you.